1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| JOSEFINA V. BALLESTEROS, | ) | NO. CV 09-06372 SS |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM DECISION AND ORDER** |
| MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration | ) | |
| Defendant. | ) | |

**I.**

**INTRODUCTION**

Plaintiff Josefina V. Ballesteros ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying her application for Disability Insurance Benefits ("DIB"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Agency is REVERSED and REMANDED for further proceedings.

**II.**

**PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on August 2, 2004. (Administrative Record ("AR") 27). Plaintiff originally alleged that she is disabled due to pain and weakness as a result of chemotherapy to treat her breast cancer. (AR 52, 62). Plaintiff subsequently alleged that she is also disabled due to neck pain from a bulging disc between her C4-5 annulus, shoulder pain from a tear in her biceps and stress. (AR 72, 76). Plaintiff noted that her disability onset date was July 8, 2003. (AR 52).

The Agency denied Plaintiff's claims for benefits initially and upon reconsideration. (See AR 29-33, 36-40). On February 21, 2006, Administrative Law Judge ("ALJ") Sherwin Biesman conducted a hearing to review Plaintiff's claims. (AR 280-96). Plaintiff, who was represented by counsel, testified. (AR 282-96). The ALJ denied benefits on July 6, 2006. (AR 12-16). Plaintiff sought review of the ALJ's decision before the Appeals Council. (AR 7). On October 12, 2006, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (AR 4-6). Plaintiff commenced an action in this Court, Case Number CV 06-07943 VAP (SS), on December 14, 2006.

The undersigned recommended that the matter be remanded for further administrative proceedings on March 3, 2008, directing the ALJ to re-evaluate the opinions of the treating physician and offer specific and legitimate reasons if he intended to reject them, re-evaluate Plaintiff's credibility and offer clear and convincing reasons if

2

rejecting it and to re-evaluate Plaintiff's RFC and support his determination with substantial evidence in the record. (AR 349). On March 25, 2008, Judge Virginia A. Phillips adopted this recommendation and the case was remanded. (AR 375).

On October 30, 2008, a second administrative hearing was held with new evidence. (AR 414-440). On May 15, 2009, the ALJ issued a decision finding Plaintiff not disabled. (AR 303-309). Plaintiff filed the instant action on September 1, 2009.

**III.**

**FACTUAL BACKGROUND**

**A.    Plaintiff's Medical History**

Plaintiff has the following impairments: history of breast cancer currently in remission, lumbar disc disease, neck pain secondary to a cervical disc bulge and left shoulder pain secondary to a rotator cuff tear. (AR 305-306). Plaintiff also has a history of chronic anxiety disorder and depression. (AR 316).

Dr. Robert Finkelstein, Plaintiff's primary doctor for thirty-one years, (AR 286), wrote the Agency a letter on February 10, 2006, stating that he believed Plaintiff's severe anxiety disorder and depression rendered her "fully incapacitated and unable to perform any type of employment, part time or full time." (AR 256). Dr. Finkelstein stated that he had treated Plaintiff for these symptoms. (Id.). Plaintiff

3

received prescriptions for Ativan, Lorazepam, Paxil and Wellbutrin, which she took to treat her anxiety and depression. (AR 257-66).

**B.   New Evidence**

The District Court directed the ALJ to further develop the record by retaining the services of a consultative examiner to offer her opinions after an examination of Plaintiff. (AR 373). Plaintiff underwent a state agency consultative psychological examination. Additionally, after the remand, Facey Medical Group submitted updated evidence through July 2008. Two medical experts and Plaintiff testified at the hearing. Lastly, Plaintiff submitted a letter from Judy Sturman, her licensed clinical social worker. Ms. Sturman is a board certified diplomate in clinical social work and a master of social work. (AR 311).

**1.   Consultative Examination**

On December 29, 2008, Dr. Evelyn Garcia performed a psychological evaluation at the request of the Department of Social Services. (AR 403). Plaintiff reported to Dr. Garcia that she needed help with shopping, making meals and doing household chores due to her pain, anxiety and depression, though she could dress, bathe and walk on her own. (AR 406). Her husband drove for long trips and managed Plaintiff's money. (Id.). Dr. Garcia noted that Plaintiff's mood was anxious and that Plaintiff became teary-eyed during certain tasks. (Id.). Dr. Garcia opined that Plaintiff's concentration and attention span were mildly impaired but she was able to do various tasks. Based

4

on test results and clinical data, Dr. Garcia opined that Plaintiff's overall cognitive ability fell within the borderline range and that diagnoses included major depressive disorder and anxiety disorder.  (AR 408).  Dr. Garcia noted difficulty with daily tasks due to chronic pain, anxiety and depression.  (Id.).  Dr. Garcia opined that Plaintiff would be able to understand, remember and carry out short and simplistic instructions and that Plaintiff has a mild inability to understand, remember and carry out detailed instructions but could make simplistic work-related decisions.  (Id.).  Dr. Garcia recommended that Plaintiff continue psychological treatment in order to help her overcome her depression and anxiety.  (AR 409).

**2.   Updated Records From Treating Physician**

Updated records from Dr. Finkelstein's medical group, Facey Medical Group, revealed that Plaintiff still experienced recurring problems with depression and anxiety disorder.  In April 2008, Plaintiff's depression was under very good control and she asked to discontinue her medication. (AR 327).  The doctor lowered her dosage.  (AR 327).  At her June 27, 2008 appointment, her doctor reported that her depression with anxiety disorder was still under excellent control but Plaintiff remained on Ativan and Wellbutrin.  (AR 317).  However, Plaintiff was then advised at her July 17, 2008 appointment to increase her Wellbutrin dosage again for her anxiety.  (AR 313-315).  She was reportedly seeing a therapist in July 2008.  (AR 313-315).  The most recent report from Facey Medical Group reports that Plaintiff still suffered from depression and anxiety and was on medication (Wellbutrin and Ativan) as of July 2008.  (Id.).

5

### 3.   Testimony of Medical Experts

Glenn Griffin, M.D., an impartial medical expert, testified at trial.  He stated that he did not review the Facey Medical Group records.  (AR 419).  He believed Plaintiff had a severe condition and required further psychological assessment to determine how severe.  (Id.).

Reuben Beezy, the second medical expert, did not comment on Plaintiff's psychiatric manifestations.  (AR 422).  He testified that Plaintiff had glaucoma, neck pain with radiation into the arms, shoulder pain secondary to a rotator cuff tear, which was confirmed by an MRI, back pain and benign postural vertigo.  (AR 422-423).  Dr. Beezy opined without explanation that none of Plaintiff's conditions met a listing but that he thought Plaintiff was sedentary considering her neck and back problems.  (AR 422).

### 4.   Plaintiff's Testimony

Plaintiff testified that she was taking Lorazepam, Wellbutrin, Actonel and Aspirin.  (AR 423).  She testified that she was not capable of sedentary work due to anxiety and depression.  (AR 424).  She testified that if she did chores, they took her a long time because she did them slowly.  (AR 429).  Plaintiff testified that she split up her cooking so she did a little each day because she got too tired and anxious.  (AR 430).  Plaintiff testified that she had anxiety attacks every day, whether at home or in public.  (AR 430-431).  She testified she went to the grocery store once in awhile when she knew there would

be few people around.  (AR 432).  Plaintiff testified that she had been receiving treatment from a psychotherapist for four years for depression and anxiety.  (AR 432).

**5.   Statement From Plaintiff's Clinical Social Worker**

Judy Sturman, MSW, LCSW, submitted a letter dated October 27, 2008, stating that Plaintiff had been in treatment with her since 2005 and opining that Plaintiff's depression, anxiety and panic disorder rendered her unable to work.  (AR 311).  Ms. Sturman wrote that Plaintiff was depressed most of the day, often had either hypersomnia or insomnia and usually felt fatigued.  (Id.).  She noted Plaintiff's weight gain and that Plaintiff's panic had been severe enough that she was unable to leave her house for several weeks at a time.  (Id.).  Ms. Sturman opined that Plaintiff would continue to have these episodes, which involve dizziness, chest pain, rapid heartbeat, shortness of breath and sweating.  Because of these attacks, Plaintiff was unable to sleep, focus or concentrate.  (Id.).

**6.   Vocational Expert**

A vocational expert departed from the hearing early and was unable to testify due to a scheduling conflict.  (AR 426).

//
//
//
//
//

**IV.**

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

---

[1]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

(3)   Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1); Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[2] age, education, and work experience.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at

---

[2]   Residual functional capacity is "the most [one] can still do despite [one's] limitations" and represents an assessment "based on all the relevant evidence in [one's] case record."  20 C.F.R. §§ 404.1545(a), 416.945(a).

721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

**V.**

**THE ALJ'S DECISION**

The ALJ employed four of the five steps involved in the five-step sequential evaluation process discussed above.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.  (AR 305).  At step two, the ALJ found that Plaintiff's history of breast cancer, currently in remission, lumbar disc disease, neck pain secondary to a cervical disc bulge and left shoulder pain secondary to a rotator cuff tear were severe impairments.  (AR 306).  However, the ALJ found that Plaintiff's anxiety and depressive disorders were nonsevere.  (Id.).  At step three, the ALJ ascertained that Plaintiff's physical impairments did not meet or equal a listing.  (Id.).

At step four, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely

10

credible.  (AR 307).  The ALJ assessed that Plaintiff had the RFC to perform "the exertional demands of medium work, or work which requires maximum lifting of fifty pounds and frequent lifting of up to twenty-five pounds."  (AR 306).  Additionally, the ALJ found that in light of Plaintiff's neck and shoulder pain, she should avoid repetitive neck or shoulder motions and would find using the arms overhead difficult.  (AR 307).  The ALJ determined that Plaintiff was capable of performing her past relevant work.  (Id.).  Accordingly, the ALJ found that Plaintiff was not disabled and did not proceed to step five.  (Id.).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance."  Reddick, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  Id.  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can

11

reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

## VII.

## DISCUSSION

Plaintiff contends that the Commissioner's decision should be overturned for four reasons. First, Plaintiff claims that the ALJ improperly assessed Plaintiff's credibility. (Memorandum in Support of Plaintiff's Complaint ("Complaint Memo") at 4-7). Second, she asserts that the ALJ erred in determining that depression and anxiety were not severe impairments. (Id. at 8-10). Third, Plaintiff claims that the ALJ did not properly evaluate the assessments and opinions of treating and examining physicians. (Id. at 10-12). Finally, she asserts that the ALJ erred in not considering the combined effects of all of Plaintiff's impairments in assessing her RFC. (Id. at 12-15). The Court agrees with some of Plaintiff's contentions and finds that the ALJ's decision should be reversed and remanded.

**A.   The ALJ Failed To Properly Assess Plaintiff's Mental Health Impairment At Step Two Of The Evaluation Process**

By its own terms, the evaluation at step two is a de minimis test intended to weed out the most minor of impairments. See Bowen v. Yuckert, 482 U.S. 137, 153-54, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001) (describing the step-two inquiry as a de minimis screening device to dispose of

12

groundless claims) (quoting <u>Smolen</u>, 80 F.3d at 1290).  An impairment or combination of impairments can be found "not severe" only if the evidence establishes "a slight abnormality that has no more than a minimal effect on [the claimant's] ability to work."  <u>Smolen</u>, 80 F.3d at 1290 (internal quotations and citations omitted).

The ALJ here applied more than a <u>de minimis</u> test when he determined that Plaintiff's mental impairment was not severe.  Although Plaintiff presented records of her treatment for "severe anxiety disorder associated with depression," (AR 256), the ALJ disregarded this and much of the other evidence establishing Plaintiff's mental impairments.

## 1.   The ALJ Selectively Reviewed The Evidence

The ALJ selectively reviewed the evidence regarding Plaintiff's mental impairments.  The ALJ cannot "reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result."  <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1455-56 (9th Cir. 1984).  <u>See also</u> <u>Reddick v. Chater</u>, 157 F.3d 715, 722-23 (9th Cir. 1998) (impermissible for ALJ to develop evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports").

The ALJ acknowledged the record of Plaintiff's psychological treatment, but did not address material evidence.  For instance, the ALJ focused on the fact that Plaintiff's symptoms were well controlled as long as Plaintiff was compliant and then noted that there was "[e]vidence of poor compliance."  (AR 308).  The ALJ focused on a August

3, 2005 office note that stated that Plaintiff was not taking the Paxil prescribed by Dr. Finklestein. (<u>Id.</u>, citing AR 265). The ALJ further noted that "on July 1, 2008, Dr. Finkelstein noted that [Plaintiff] was not taking Wellbutrin as prescribed." (<u>Id.</u>, citing "new medicals"). This Court disagrees with the finding that Plaintiff was not compliant with a prescribed course of treatment. As discussed above, Plaintiff used several forms of prescribed medication and other physician-recommended treatment to combat her neck and shoulder pain. That she apparently was not taking her medications on two occasions over a five-year period does not provide substantial evidence of a lack of severity of her impairment.

The ALJ noted that "[t]he only detailed and objective . . . examinations comes from the two consultative psychological consultative examinations," Dr. Colonna's March 28, 2006 report and Dr. Garcia's December 29, 2008 report. (AR 308, citing AR 269-276, 403-443). The ALJ summarized Dr. Colonna's and Dr. Garcia's opinions and concluded that Plaintiff had a "[m]oderately severe but not disabling level of depression and anxiety." (<u>Id.</u>). However, the ALJ again selectively considered the evidence in his review of Dr. Colonna's and Dr. Garcia's reports. Dr. Colonna diagnosed Plaintiff with dysthymia[3] and assigned her a Global Assessment of Functioning ("GAF") score of 65.[4] (AR 14).

---

[3] "Dysthymia is a chronic type of depression in which a person's moods are regularly low. However, it is not as extreme as other types of depression." U.S. National Library of Medicine and National Institutes of Health, MedlinePlus Medical Encyclopedia, http://www.nlm.nih.gov/medlineplus/ency/article/000918.htm.

[4] GAF ratings range from 0 to 100. A rating of 61-70 denotes some mild symptoms (e.g., depressed mood and mild insomnia) or some

1   The ALJ further noted Dr. Colonna's finding that Plaintiff had only
2   "mild" limitations in the ability to understand, remember and carry out
3   detailed instructions.   (Id.).   Dr. Colonna did assign Plaintiff a
4   primary diagnosis of dysthymia, but conceded that Plaintiff "may meet
5   the diagnostic criteria for anxiety disorder." (AR 274).   Dr. Colonna
6   also found an indication of "moderate anxiety, depression, fatigue,
7   exhaustion, [and] insomnia." (Id.).   These findings fully support a
8   conclusion that Plaintiff did, in fact, have a severe mental impairment,
9   at least for purposes of the step two evaluation.

11        **2.    The Evidence Supports A Finding Of A Severe Mental Impairment**
12              **At Step Two**

14        Dr. Finkelstein's records show that Plaintiff repeatedly complained
15  of anxiety and depression.   Dr. Finkelstein treated her with Lorazepam.
16  When the Lorazepam proved ineffective to treat her depression, Dr.
17  Finkelstein changed Plaintiff's medication to Wellbutrin.   Dr.
18  Finkelstein found Plaintiff "fully incapacitated" as a result of her
19  anxiety disorder and depression.   Even if the ALJ found that Dr.
20  Finkelstein's opinion was not entitled to much weight in evaluating
21  whether Plaintiff was disabled at step four or five, this evidence was
22  certainly sufficient to satisfy the de minimis step two evaluation,
23  particularly when combined with clinical psychologist Rosa Colonna's
24  diagnosis of dysthymia and a GAF of 65.   As such, the ALJ's conclusion

---

26  difficulty in social, occupational or school functioning (e.g.,
    occasional truancy or theft within the household), but generally
27  functioning pretty well and maintaining some meaningful interpersonal
    relationships.   American Psychiatric Association, Diagnostic and
28  Statistical Manual of Mental Disorders 34 (4th ed., text rev. 2000).

1   at step two, that Plaintiff's mental impairment was not severe, was

2   error.  See 20 C.F.R. § 416.920a(b)(1).

4        On August 3, 2004, the Agency conducted a face-to-face interview

5   with Plaintiff, in which the interviewer noted that Plaintiff's "eyes

6   were constantly tearing and red" and that "she appeared to be tired and

7   depressed."  (AR 60).  On June 30, 2005, an unidentified doctor,

8   apparently Dr. Finkelstein, noted that Plaintiff "has been depressed and

9   quite anxious and actually is crying in the office."  (AR 266).  On

10  August 3, 2005, Dr. Sheldon Davidson, Plaintiff's oncologist, noted that

11  "she still has depression and crying spells."  (AR 265).  On August 8,

12  2005, Dr. Finkelstein noted that Plaintiff was feeling "quite anxious."

13  (AR 264).  On September 6, 2005, he diagnosed her with "chronic anxiety

14  and depression."  (AR 263).  On November 17, 2005, Dr. Finkelstein noted

15  "[s]ome improvement in depression and anxiety."  (AR 261).  On December

16  5, 2005, Dr. Albert Dekker, an oncologist, noted that Plaintiff was

17  "very emotional."  (AR 258).  On January 10, 2006, Dr. Finkelstein noted

18  that the Wellbutrin helped Plaintiff to feel "much less anxious."  (AR

19  257).

21        Moreover, the ALJ failed to consider the recent psychological

22  consultation performed for the Department of Social Services.  On

23  December 29, 2008, Dr. Evelyn Garcia performed a psychological

24  evaluation at the request of the Department of Social Services.

25  Plaintiff reported to Dr. Garcia that she needed help with shopping,

26  making meals and doing household chores due to her pain, anxiety and

27  depression, though she could dress, bathe and walk on her own.  (AR

28  406).  Her husband drove for long trips and managed Plaintiff's money.

(<u>Id.</u>).   Dr. Garcia noted that Plaintiff's mood was anxious and that Plaintiff became teary-eyed during certain tasks. (<u>Id.</u>).   Dr. Garcia opined that Plaintiff's concentration and attention span were mildly impaired but she was able to do the tasks at hand.   Based on test results and clinical data, Dr. Garcia opined that Plaintiff's overall cognitive ability fell within the borderline range and that diagnoses included major depressive disorder and anxiety disorder. (AR 408).   Dr. Garcia noted difficulty with daily tasks due to chronic pain, anxiety and depression. (<u>Id.</u>).   Dr. Garcia opined that Plaintiff would be able to understand, remember and carry out short and simplistic instructions and that Plaintiff has a mild inability to understand, remember and carry out detailed instructions but could make simplistic work-related decisions.   (<u>Id.</u>).   Dr. Garcia recommended that Plaintiff continue psychological treatment in order to help her overcome her depression and anxiety.   (AR 409).   Substantial evidence supports Plaintiff's allegations of disability due to anxiety and depression.

**3.   The ALJ Failed To Employ The Agency's Regulations For The Evaluation Of Mental Impairments**

Before remand, the ALJ failed to follow the Agency's own regulations for the evaluation of mental impairments.  (AR 357-358). The ALJ again failed to follow these regulations.   Where there is evidence of a mental impairment that allegedly prevents the plaintiff from working, the Agency has supplemented the five-step sequential

17

evaluation process with additional regulations.[5] <u>Maier v. Comm'r of the Soc. Sec. Admin</u>., 154 F.3d 913, 914-15 (9th Cir. 1998) (citing 20 C.F.R. § 416.920a)(per curiam).  First, the ALJ must determine the presence or absence of certain medical findings relevant to the plaintiff's ability to work.  20 C.F.R. § 416.920a(b)(1).  Second, when the plaintiff establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 416.920a(c)(2)-(4).  Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment.  20 C.F.R. § 416.920a(d).  Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920a(d)(2).  Finally, if a listing is not met, the ALJ must then assess the plaintiff's RFC, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 416.920a(c)(3)]."  20 C.F.R. § 416.920a(d)(3), (e)(2).

---

[5] These additional steps are intended to assist the ALJ in determining the severity of mental impairments at steps two and three. The mental RFC assessment used at steps four and five of the evaluation process, on the other hand, require a more detailed assessment.  Social Security Ruling 96-8P, 1996 WL 374184 at * 4.

The regulations describe an impairment as follows:

A physical or mental impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a plaintiff's] statements of symptoms.

20 C.F.R. § 416.908; see also Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (noting that the existence of a medically determinable physical or mental impairment may only be established with objective medical findings) (citing Social Security Ruling 96-4p, 1996 WL 374187 at *1-2).

Here, the ALJ erred by finding that Plaintiff's mental impairment was not severe at step two.  Furthermore, the ALJ should have evaluated Plaintiff's mental impairment by applying the agency's regulations, as described above.  As such, remand is required to remedy these defects.

**B.   The ALJ Did Not Consider The Combined Effect Of Plaintiff's Physical and Mental Impairments In Determining Her Residual Function Capacity**

The ALJ first determined that Plaintiff had only slight mental impairments that would not interfere with her ability to do "simple and some detailed work or worklike tasks."  (AR 306).  He then addressed

Plaintiff's RFC.  The ALJ determined that Plaintiff, a nearly-sixty-year old woman with severe neck and shoulder pain, can perform medium work, which requires maximum lifting of fifty pounds and frequent lifting of up to twenty-five pounds.  (AR 306-307).  In light of Plaintiff's neck and shoulder pain, the ALJ also found that Plaintiff should avoid repetitive neck or shoulder motions and would find using the arms overhead difficult.  (AR 307).

Although the ALJ claimed that "[i]n making this finding, [he] considered all symptoms," the ALJ did not sufficiently weigh Plaintiff's mental impairments in his discussion.  This was error.  See Edlund, 253 F.3d at 1158 ("'Important here, at the step two inquiry, is the requirement that the ALJ must consider the combined effect of all of the claimant's impairments on h[is] ability to function, without regard to whether each alone was sufficiently severe.'") (quoting Smolen, 80 F.3d at 1290); 20 C.F.R. §§ 404.1523, 416.923.  Even if the ALJ had been correct that Plaintiff's mental impairments were non-severe, he was still required to consider the limitations arising from those non-severe impairments in determining her RFC.  20 C.F.R. § 404.1545(a)(2) ("[W]e will consider all of your medically determinable impairments . . . including your medically determinable impairments that are not "severe.").  While the ALJ did take into account Plaintiff's mild problems understanding, remembering and carrying out complex instructions, he completely disregarded substantial evidence in the record that Plaintiff suffers from frequent and disabling anxiety attacks.

In addition, the ALJ must consider each of Plaintiff's individual physical impairments. Here, the ALJ did not address the joint pain that Plaintiff experienced while on the course of aromatase inhibitors in the months following her chemotherapy. The ALJ also did not address Plaintiff's report that she does "very little lifting" and that "because of the pain and weakness," anything she carries "must be light in weight." (AR 63). This evidence contradicts the ALJ's determination that Plaintiff can perform medium work. Although the Agency's consultative RFC assessment indicated that Plaintiff could handle medium work, (AR 244-54), this opinion appears to be conclusory. Regardless, the ALJ did not refer to it in his decision. Accordingly, this issue also requires remand so that the ALJ can make a proper determination of Plaintiff's RFC in light of the entire record.

## VIII.

### CONCLUSION

Upon remand, the ALJ must evaluate Plaintiff's mental impairment at step two, following the agency's own regulations for mental impairments. In addition, the ALJ must re-evaluate Plaintiff's RFC and support his determination with substantial evidence in the record. In making this determination, the ALJ must consider the combined effects of all of Plaintiff's impairments -- physical and mental -- and all of the record evidence in making his RFC determination. The ALJ should call a vocational expert to testify, as Plaintiff suffers from both exertional and non-exertional impairments. The ALJ must complete the five-step analysis so that this Court has adequate information in reviewing any decision for harmless error.

21

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[6] IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 30, 2010


_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

---

[6]  This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."